# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JOHN T. ORGAN, III                                                           PLAINTIFF

V.                   NO. 4:17CV00721 BRW-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction**

Plaintiff, John T. Organ, III ("Organ") applied for supplemental security income benefits on January 8, 2015 and for disability income benefits on January 18, 2015. (Tr. at 53). In both applications, he alleged an onset date of January 2, 2015. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Organ's applications on September 14, 2016. (Tr. at 66). The Appeals Council

denied his request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

**II. Discussion**

The ALJ found that Organ had not engaged in substantial gainful activity since January 2, 2015, the date he alleged he became disabled (Tr. at 55). At Step Two, the ALJ found that Organ had the following severe impairments: hypertension, degenerative disc disease at L2-3 and L3-4, herniated nucleus pulposus at L3-4, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome post-surgery, morbid obesity, non-insulin dependent diabetes mellitus and degenerative joint disease of the knees. *Id.*

After finding that Organ's impairments did not meet or equal a listed impairment (Tr. at 56),[1] the ALJ determined that Organ had the residual functional capacity ("RFC") to perform the full range of work at the sedentary level, except that: (1) he would not be able to perform any job requiring climbing, crawling, kneeling, crouching, or bending, and (2) he could perform jobs with simple tasks

---

[1] The Court notes that the ALJ did not specifically refer to any of the impairment categories in the Adult Listing of Impairments, and therefore, his discussion at this step of the sequential analysis seems insufficient. (Tr. at 56). Organ did not raise this argument, so it is deemed waived. However, reversal is warranted on other grounds.

and simple instructions. *Id.*

Based on Organ's RFC, the ALJ found that he was unable to perform any past relevant work. (Tr. at 64). At Step Five, the ALJ relied upon the testimony of a Vocational Expert ("VE") to find that, based on Organ's age, education, work experience and RFC, he could perform other jobs, such as inspector/checker/sorter and compact assembler. (Tr. at 65). Thus, the ALJ held that Organ was not disabled. (Tr. at 66).

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

3

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Organ=s Arguments on Appeal

Organ contends that substantial medical evidence does not support the ALJ=s decision to deny benefits. Specifically, he argues that the ALJ: (1) failed to fully develop the record; (2) erred at Step Two in finding no mental impairments; (3) did not conduct a proper credibility analysis; (4) failed to give proper weight to treating and examining physician opinions; and (5) did not properly evaluate Organ's obesity. For the following reasons, the Court finds support for reversal.

Organ suffered from documented pain associated with problems in his back, knees, and hands. (Tr. at 55-62). He treated aggressively with injections, pain management, and surgeries. *Id*. However, it is the ALJ's failure to properly develop the record related to Organ's *mental impairments* that is most problematic. (Tr. at 55-62). Organ did not allege a mental disorder in his application documents, and the first state agency reviewing psychiatric consultant found no evidence of mental health treatment in an opinion that was dated March 26, 2015. (Tr. at 200). She cited lack of treatment and lack of diagnosis to conclude that Organ had no mental impairment. *Id*. The second reviewing psychiatric consultant referenced a March 2015 diagnosis of anxiety and insomnia in his report dated July 22, 2015. (Tr. at

4

234-235). That consultant conducted the required Psychiatric Review Technique, but he found mental health problems to be non-severe at Step Two. *Id*. The ALJ relied upon these consulting opinions to support his conclusion that Organ had no mental impairments. (Tr. at 63).

However, Organ sought regular mental health treatment at Counseling Associates, Inc. ("CAI"), from therapist, Jason Gentry, and psychiatrist Dr. Kevin Price, during the relevant time-period. (Tr. at 101-124, 651-663). Unfortunately, Organ only submitted evidence of one out of his nine mental health appointments to the ALJ before the hearing, but he also submitted to the ALJ a medical source statement from Dr. Price, dated May 31, 2016. (Tr. at 661-663). Dr. Price was the overseeing psychiatrist at CAI, and he based his opinion on the CAI treatment records. He opined that Organ would have *no useful ability* to remember locations and procedures, understand and carry out simple instructions, maintain attention and concentration, perform within a schedule, respond appropriately to supervision, make simple work-related decisions, perform at a consistent pace, interact appropriately with the public, among other things. (Tr. at 661). Dr. Price made a handwritten note on the form saying, "If he is awarded a disability check, then I would recommend a payee. I don't see how with all his medical and psychiatric issues he can work." *Id*. The ALJ gave this opinion *no weight*, saying that Dr. Price had never treated Organ. (Tr. at 63). Actually, Dr. Price saw Organ on February 5,

2016, and noticed a depressed mood and constricted affect. (Tr. at 120-123). He diagnosed unspecified depressive disorder and prescribed Venlafaxine and recommended that Organ continue therapy sessions. *Id*. A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). Here, the CAI treatment notes lend support to Dr. Price's opinion.

Both Dr. Price and Jason Gentry repeatedly discussed how severe pain from physical impairments was contributing to depression, and that while Organ had tried to lose weight as suggested by his doctors, pain made exercise impossible. (Tr. at 101-124). Mr. Gentry noted that physical pain was limiting coping skills, as well as affecting Organ's general ability to function in his daily life. (Tr. at 110-111). At some appointments, Organ was optimistic about getting better with future surgeries planned for his back, knees, and hands, but depression remained a formal diagnosis throughout the relevant time-period.

Organ testified at the hearing that he was attending therapy sessions every 4-6 weeks and that he had been taking Wellbutrin for years. (Tr. at 140-150). The ALJ himself acknowledged that Organ took Wellbutrin. (Tr. at 59). Organ explained that due to pain and depression (which was itself exacerbated by pain), his mother had to do most everything for him, and this made him feel even worse. (Tr. at 153-156).

Organ's testimony, paired with the CAI records, show that pain and depression dogged him throughout the relevant time-period, in spite of his compliance with treatment and his best efforts to maintain healthy functioning.

Organ points out that his attorney requested a consultative psychiatric examination multiple times. She did. (Tr. 413, 460-461). The ALJ flatly denied this request in his decision, and incorrectly stated that the record revealed no mental health treatment. (Tr. at 64-66). An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). The ALJ is required to recontact a treating or consulting physician or order further testing if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). The opinion evidence in this case was diametrically opposed. Dr. Price said Organ could not work due to mental impairments, and the state-agency psychiatric consultants found no severe mental impairments.[2] This conflict required further development, and the ALJ should have ordered a psychiatric consultative examination.

Further compounding the ALJ's error is his RFC limitation to work with only simple tasks and simple instructions. On the form Dr. Price submitted wherein he said Organ would have no useful ability in several psychological domains, he hand

---

[2] The state-agency opinions issued four months before Organ started regular mental health treatment. (Tr. at 200-234).

wrote the question "How simple are we talking about?" when asked if Organ could make simple work-related decisions. (Tr. at 661). So the only psychiatrist that ever saw Organ was unsure of how to respond to this question about "simple" work. And the ALJ gave his statement no weight. And he found no mental impairment. But still he limited Organ to simple work in the RFC? On what did the ALJ base this opinion? As Organ's attorney points out in her brief, "the ALJ never tells the reader." The ALJ may not fashion an RFC from whole cloth. He may not draw his own inferences from medical reports. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Because a claimant's RFC is a medical question, the ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Cox. v Astrue*, 495 F.3d 614, 619 (8th Circ. 2007). If the treating psychiatrist's opinion that mental impairments significantly limited Organ was not sufficient for the ALJ, he should have ordered a psychiatric examination. Because he did not, his Step Two determination was unfounded; following on, the Step Four RFC limitation to simple work made no sense. The ALJ erred at several points in his decision.

## II. Conclusion

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to properly develop the record with respect to mental impairments, which compromised his Step Two and Step Four determinations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 21st day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE